## ZEPHYR AMERICAN CORPORATION v. BATES MFG. CO. et al.

### Civil Action No. 23.

District Court, D. New Jersey.

Aug. 22, 1941.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Darby & Darby, by Samuel E. Darby, Jr., and Donald J. Overocker, all of New York City, of counsel), for plaintiff.

Gifford, Scull & Burgess, by Newton A. Burgess, all of New York City, for defendants.

FAKE, District Judge.

This is a declaratory judgment proceeding in which the plaintiff seeks to have two patents declared invalid. They are designated respectively as the Drucker patent No. 1,895,409, the sole ownership of which is in the defendant corporation, and the Peter patent No. 2,115,537, which the defendant Peter owns subject to an exclusive license in the defendant Bates Manufacturing Company to use it and manufacture and sell under it in the United States.

The defendant corporation is now and has for some years been engaged in the manufacture and sale of office supplies at Orange, New Jersey, and among its products was a rotary index for listing names and telephone numbers for ready reference in connection with the use of the telephone. It was known as the Bates Telephone Index and was first put upon the market in 1923. Some twenty-three thousand were sold the first year, and when they adopted the newer device with which we are here concerned, upwards of five hundred thousand of them had been sold at $2.50 a piece. This demonstrated clearly to the Bates Company the existence of an active demand and ready market for indexes designed for such use.

In the year 1936, Mr. Peter of Vancouver, British Columbia, Canada, wrote the Bates Manufacturing Company informing them that he had an indexing device which was far superior to the one they were then marketing; that he had not patented it and sought a connection with them whereby it might be patented and a royalty agreement arranged to their mutual advantage. With his letter Mr. Peter sent along a model of his invention which is in evidence as exhibit D–6. This model is the parent of the devices now being very extensively marketed by both parties to this suit, and Peter has, by virtue of an agreement which was entered into with the Bates Company, enjoyed royalties of about $22,000. In preparing to patent the invention of Mr. Peter, the Bates Company caused a search to be made in the patent office and found the Drucker patent which the Peter patent infringed. Whereupon the Bates Company purchased the Drucker patent, and it is under these two patents that they have been operating since 1936. In the short period of four years the combined sales of indexes of the parties to this suit, figured at $1.25 each, aggregate upwards of $1,875,000. From these figures the conclusion cannot be escaped that the patents in suit have met with much more than ordinary financial success.

Early in 1937 Mr. Albert E. Pollock of New York participated in the organization of the plaintiff corporation, became its secretary and treasurer and, I take it, has been its guiding spirit ever since. Pollock testified that he was inspired to go into the List Finder business because of the Bates device. He had one in his possession similar to plaintiff's exhibit 3 which was made by the Bates Company, and on using it one of the tabs got torn, whereupon he studied it and concluded that he had worked out something more than an improvement on it. This consisted in putting a cylindrical axle horizontally through the cover and fastening the index sheets to a cylindrical slotted housing which covers the axle, in which housing the slots are so arranged as to receive index sheets cut to fit, which then move upward on the inside of the cover when it is opened. This differs from the Bates list finder, among other differences, in that Bates' index sheets lay flat fastened to the base, and have no axle to which they are attached horiztonally; the index sheets being fastened in by two bolts which extend perpendicularly through a superimposed stationary base designed to meet the swinging cover, just as a trap door frame

holds and permits the door to swing up. In the Bates device the index sheets are successively creased so that each sheet stands perpendicularly without binding on its neighbor when the cover is sprung open. Pollock contends that his idea is patentable, and in substantiation thereof, produces a patent issued to him No. 2,-141,761 applied for on April 2, 1938 containing fifteen claims.

█ With the foregoing in mind Pollock called on the Bates Company in December of 1937; again on January 4, 1938, and again on January 18, 1938, representing that he had a valuable idea which they ought to buy from him for $2,500. On studying it with their patent attorney, they were not convinced of its patentability over Drucker and Peter or of its virtue for their purposes, and no agreement was arrived at. It appears that prior to Pollock's call Bates had filed an application for an amendment to their Peter patent and on January 6, 1938, they made changes in it; these changes being made, as Pollock contends, after he had given them his ideas upon their promise not to broaden their claims to cover his disclosures. As to this I am convinced that there was no patentable virtue in Pollock's ideas over and above what Drucker and Peter had covered in their earlier patents. Moreover, having had the benefit of the personal appearance of the witnesses before me at the trial, and studying the letters and the record bearing on it, I am of the firm conviction that much ado has been made about nothing on this point. The conduct of the Bates' witnesses as to their dealings with Drucker and Peter and their attitude at this trial leads me to the conclusion, as a trier of fact, that they have not been guilty of unethical or inequitable conduct or conduct for which they should be mulcted in damages in favor of the plaintiff, whose guiding spirit Pollock, working on the device Bates had bought and paid the inventor for, tried to improve upon it without accomplishing anything more than raising an equivalent which belonged to the Bates Company by virtue of their patents. A study of the Pollock patent and a reading of it on Drucker and Peter leads to the conclusion that it was erroneously issued, since nothing is claimed therein which can be conceived as more than the equivalents which followed with the earlier patents held by Bates. Moreover, it should be classified as clearly within the skill of the art when applied in the light of those patents.

██ Considering now the attack upon the validity of the Drucker patent: It is argued for the plaintiff that this patent is invalid because of prior disclosures, and also because it does not rise higher than the mere skill of the art. It covers a "Register or Index" and contains seven claims. The drawings and specifications describe an index device the elements of which were old when the patent was issued, as appears by reference to the patents cited by the plaintiff to that effect. The defendant Bates bought this patent in 1936 because, as has been seen, it was in conflict with the Peter patent, and they required both to be safe in embarking upon the manufacture and sale of the Peter device. Combining then the virtues of these two patents Bates entered the field and met with the instantaneous success above mentioned.

█ The validity of the Peter patent is also attacked because of prior disclosures and lack of invention. Here again it appears that the elements involved in the combination were old when the patent was issued. Thus, the issue is narrowed down to a question as to whether either of the patents in suit amount to anything more than demonstrations of the skill reasonably to be assumed on the prior state of the art. More often than not such an issue raises questions which are quite difficult of solution, since in dealing with them the judge must not only consider the factors presented in the case before him, but must as far as possible submit to a careful self-examination for the purpose of measuring his own ability to place himself neither above nor below that vantage point which the language of the cases fixes as the station from which he must view the material before him; that sometimes nebulous and uncertain position from which one reasonably skilled in the art directs his sight. Obviously, a trier of fact possessed of technical skill of higher degree than that of those reasonably adept in the art should not use his own viewpoint but rather that of the average artisan, in the field. Always then, the fact finder should be deeply concerned with himself as to whether his viewpoint is higher or lower than it should be as he attempts to visualize the contrivances presented for the test of patentable invention when opposed by the theory of the skill of the

896

art. In this mental attitude I have thought of the divers factors which make up the record in this case, and have finally come to the conclusion where I find myself firmly convinced that the patents in suit amount to something more than one reasonably skilled in the art might devise, and therefore their validity is established. It required something more than mere designing skill of a high order to bring all the elements here involved together in the desired space for the utilitarian purpose intended at the same time avoiding all the awkward, the cumbersome, the impractical, and inartistic devices which are seen cluttering up the prior art. None of these prior gadgets were ever notably useful, nor does it appear that any of them ever met with outstanding financial success. The something more which I have in mind resides in the ingenuity displayed in bringing the right things together in their proper relations and proportions for the use intended, causing thereby a much more efficient result in connection with the use of the telephone.

There is some doubt as to whether this court has the power to entertain counts in a declaratory judgment complaint charging unfair competition. It is not necessary, however, to pass upon that question here, since assuming the validity of the counts I am convinced that the notices sent out to the trade by the defendant Bates Manufacturing Company and their conduct in protecting their rights under the Drucker and Peter patents were fully justified.

A decree will be entered for the defendants establishing the validity of the Drucker and Peter patents and against the plaintiff for infringement thereof containing such provisions as may hereafter be fixed on notice.